IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PEGGY STRICKLAND,                        )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        CIVIL ACT. NO.  2:14cv858-CSC
                                         )                   (WO)
LASHUN HUTSON, in his individual         )
capacity and also in his official capacity )
as a Lowndes County Deputy Sheriff,      )
                                         )
            Defendant.                   )

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

Plaintiff Peggy Strickland ("Strickland"), filed this action pursuant to 42 U.S.C. §
1983, alleging that the defendant falsely arrested her without probable cause in violation of
her Fourth and Fourteenth Amendment rights.  Strickland names as the sole defendant
Lowndes County deputy sheriff Lashun Hutson ("Hutson").  The court has jurisdiction of the
plaintiff's claim pursuant to its federal question jurisdiction, 28 U.S.C. § 1331.  Pursuant to
28 U.S.C. § 636(c)(1) and M.D. ALA. LR 73.1, the parties have consented to a United States
Magistrate Judge conducting all proceedings in this case and ordering the entry of final
judgment.

This case is now pending before the court on the defendant's motion for summary
judgment.  *See* Doc. # 25. The plaintiff has filed a response in opposition to the motion.  *See*
Doc. # 31.  After careful consideration of the motion, evidence and arguments in support of

and in opposition to the motion, the court concludes that the defendant's motion (doc. # 25) is due to be granted.

## II.  THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof.  *Id.* at

---

[1]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

322-324.

Once the defendant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in her favor. *Greenberg*, 498 F.3d at 1263.

To survive the defendant's properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" establishing a violation of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Hence, when the plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of

an element essential to her case and on which she will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

### III.  FACTS[2]

Peggy Strickland ("Strickland") is a rural mail carrier assigned to the United States Post Office in Fort Deposit, Alabama.  (Doc. # 27, Ex. B1 at 17).  Part of her route requires her to travel on Highway 21 in Lowndes County, Alabama.  On January 6, 2014, Strickland encountered horses in the middle of Highway 21.  (*Id*. at 26-37).  Strickland had previously complained to the postmaster about the horses being in the road because she was afraid she was going to hit one.[3]  (*Id*. at 33, 35).

On another day in January,[4] Strickland was delivering mail on Highway 21 when she came upon a man leading horses down the middle of the road.  When she stopped to deliver mail at a local store, she asked the store owner about the horses who told her that Antonio Hicks owned the horses.[5]  (*Id*. at 26, 39, 41).  Strickland returned to the post office and reported that the horses were in the road again. (*Id.* at 42).

On January 15, 2014, Strickland was approaching a row of mailboxes to deliver mail when she saw Hicks sitting on his motorcycle in front of the boxes.  (Doc. # 27, Ex. B1 at 59; Doc. # 27, Ex. 7).  Strickland continued on her route, bypassing the mailboxes, but Hicks

---

[2] The court construes the facts in the light most favorable to the non-movant plaintiff, and draws all reasonable inferences in her favor.  Thus, the following facts are treated as undisputed for purposes of summary judgment.

[3] She had also asked Anthony Sellers ("Sellers") to move the horses out of the road.  (Doc. # 27, Ex. 7).  On at least one occasion, Sellers refused to move the horses, and he yelled at Strickland that the horses were not his.  (*Id*.).  The date of this incident is unclear.

[4] It is unclear from the record on which day this incident occurred.

[5] Antonio Hicks is the son of Anthony Sellers.

rode his motorcycle in front of her "weaving and weaving and weaving . . . [s]lowing down, going fast, slowing down, going fast."  (Doc. # 27, Ex. B1 at 59).  Although Strickland complained to her co-workers, she did not report Hicks' behavior to the postal inspectors or local police. (*Id*. at 64).

On January 16, 2014, Strickland was on her mail route when she saw a parked car with two men in it.

> A:      I look across the street, and I see a car sitting there with two gentlemen in it, and they're just sitting there.  So I go to turn in Knight Place Road.  And when I went to turn in Knight Place Road, they jumped in front of me.  And when they jumped in front of me with their car, they spun off, and rocks went all over my car.
>          So I keep going to deliver the mail, and they're in front of me.  And then all of a sudden, they stop right in the middle of the road.  When they stop right in the middle of the road, I realize that they've stopped, so I go to go around them.
>          And as I'm going to go around them, I see someone jump out and go to their trunk and get what I believe to be a weapon and point it, ting, and I took off, floored it.

(*Id*. at 66-67).

Strickland recognized Hicks as the driver of the car and Clinton Jones as the passenger.  (*Id*. at 74).  Strickland called 9-1-1 from Eva Scott's ("Scott") driveway.

> I need a sheriff to come out here on 280 Knight's Place Road and I got an individual, I'm a mail carrier, and I got an individual who looks to me like he got a gun out of his car and he's at the end of the road where I have to go...
>
> *      *      *
>
>  . . . I guess he's got a gun.  He stopped in front of me and got something out of his trunk and then when I went to deliver  . . . it's like he's waiting on me. . . got out of his car . . .

6

(Doc. 28, Ex. J, audio file 1).

The Lowndes County Sheriff's department called back and asked Strickland if she knew the direction the subject was headed. (Doc. 28, Ex. J, audio file 2). At that time, Strickland identified Hicks as the driver of the car. (*Id*.).

Another member of the Lowndes County Sheriff's department called back. While Strickland was on the phone, Hicks pulled into Scott's driveway. (Doc. 28, Ex. J, audio file 3). Strickland was advised to stay on the phone, but Hicks left. (*Id*.) Strickland was able to identify the make of the car and the direction that it went. (*Id*.) At no time during the call, did Strickland report that Hicks pointed a gun at her while he was in the driveway.

While Strickland was waiting for deputies to arrive, the operator asked Strickland if she could talk to Eva Scott.

A:    Hello.

Q:    Hey Eva, this is Gwen. How you doing?

A:    I'm alright.

Q:    Is that Antonio Hicks?

A:    Yes ma'am.

Q:    Okay, why would he have a 10-32 at the mail carrier?

A:    I don't even know girl - I don't know.

Q:    Okay well you just - if he comes back to the residence you just call us. Keep the doors locked and don't let him inside. We got two units that are on the way. They should be there by now.

7

A:    Okay then alright.

(*Id*.).

Sergeant Ed Jones of the Lowndes County Sheriff's Department was the first officer on the scene. (Doc. # 27, Ex. E at 1). Jones spoke with Strickland and prepared an Alabama Uniform Incident/Offense Report.

> On the date and time listed, Ms. Strickland filed a report with the Lowndes County Sheriff office. Mr. (sic) Strickland stated she was on her route, delivering the mail on County Road 45, approaching Knight Place Rd, when she saw a black vehicle that was pulled over off the shoulder of County Road 45. The black vehicle turned onto Knight Place Rd, cutting her off. Ms. Strickland stated she made a right turn off County Road 45 onto Knight Place Rd. Ms. Strickland stated the black vehicle took off in front of her kicking up dirt and rocks. The black vehicle then stopped in the road and a black male exited the drivers side of the vehicle. The driver pops the trunk and ran to the back of the vehicle and grabbed what appeared to be a chrome shiny hand gun and pointed it at her vehicle. Ms. Strickland stated she applied the gas pedal and went around the black vehicle. Ms. Strickland stated the driver of the vehicle was Antonio Hicks and the passenger was an unknown black male. Ms. Strickland stated she drove as fast as she could and the black car was chasing her. Ms. Strickland stated she made a right turn off Knight Place Rd. into a private drive and parked inside a garage and the black car kept going down Knight Place Rd. Ms. Strickland stated she blew her horn, but no one came out of the residence. Ms. Strickland stated she back (sic) out of the private drive and traveled back onto Knight Place Rd. until she saw several black people standing out in a yard at the address of 284 Knight Place Rd. Ms. Strickland stated she told the people to call Lowndes County E-911 and stated Antonio Hicks and another black male point (sic) a gun at her. Ms. Strickland stated minutes later the black vehicle returned and pulled into the yard where she was parked and Mr. Hicks pointed something that appeared to be a gun at her again and called her a bitch. Ms. Strickland stated she ducked down in the mail carrier truck and Mr. Hicks pulled off.

(Doc. # 27, Ex. A; Ex. E at ¶¶ 6-11).

While Jones was speaking to Strickland, Hicks arrived. (Doc. # 27, Ex. E at ¶13).

8

Jones took Hicks into custody.  (*Id*.).  A search of Hicks and his vehicle uncovered no

weapon.[6]  (*Id*. at ¶ 14).

Hutson was also on the scene.[7]  (*Id*. at ¶ 5).  Jones relayed Strickland's statements to

Hutson.  (*Id*. at ¶ 15).

On January 16, 2014, Strickland provided a written statement to United States Postal

Inspectors.

> Wed 1-16-14  I turn in the Knight Place Road and I see a black car sitting there
> on the side of the road.  I go to pull in and he pulls in right ahead of me.  He
> start out slow and than (sic) takes off throwing road all over my car. He stop
> at Randolph Lane and jumps out of his car, called me a bitch . . . and goes to
> his trunk and gets a gun out and points it at me.  I take off.  Flying.  He takes
> off flying to (sic).  I pull off quick at Shelly Moorer house and pull under her
> shed and he goes by flying.  Him and a young boy.  I then pull out and got
> back to Co Rd 45 and pull in Eva Scott house 284 and ask for help. her bring
> me the phone.  I call 911 and 911 told me they would call me back.  So I call
> Temika and tell her what happen.  Need (sic) he pulls back up in the yard right
> next to me and points a gun a (sic) me again  911 call me back and I am on the
> phone with them when he pull (sic) back up.  I roll my window up and duck
> in the floor.  Until he leaves again and the people standing out side leave and
> go in the house in case he was going to do something.  He leave (sic) and goes
> back down the road and comes back again, by this time Mr. Ed Jones was there
> and this man got out of car and Mr. Jones took him.  This man pointed a gun
> a (sic) me TWO time (sic).  I do believe he would have shot me.

---

[6] Hutson also testified that, during the investigation, they discovered that Hicks had taken the car
he was driving to a body shop.  (Doc. # 27, Ex. C at 44-47).  Hicks then returned to Knight Place Road in
a different car.  The officers obtained permission to search the car at the body shop and did not find a gun
in that vehicle either.  (*Id*.).

[7] It is unclear when Hutson arrived on the scene.  Hutson testified in deposition that he spoke to
Strickland at the scene.  (Doc. # 27, Ex. C at 41-43).  Jones also indicated that he observed Hutson talking
to Strickland.  (Doc. # 27, Ex. E at ¶ 5).  Strickland, however, denies that she spoke to Hutson at the scene,
or at any other time.  (Doc. # 27, Ex. B1 at 80).  Construing the facts in the light most favorable to Strickland,
this dispute is insufficient to preclude summary judgment because it is undisputed that Jones relayed to
Hutson all of Strickland's statements about Hicks pointing a chrome handgun at her.  (*Id*. at ¶ 15).

> This person I am talking about is Tony Hicks. The gun was a handgun. this gun was shinny (sic).

(Doc. # 27, Ex. B2, Ex. 7 at 2-3).

On January 17, 2014, Strickland gave a written statement to Anita Till, an employee

of the Fort Deposit Post Office.  (Doc. # 27, Ex. B1 at 127).

> I came to Knight Place about 9:40 am and noticed a car (Black in color) just sitting there, so I went to turn in and he (Tony Hicks) turned in, in front of me goes very fast, throwing rocks all over my case.  Than (sic) he stop the car at Randolph Lane and jumped out of the car, and went to his trunk, I went to go around him and he (Tony Hicks) pulled out a gun (and pointed at me).  I took off and pulled in Shelly Moorer yard (under her porch) (660 Knight Place) to get help.  She was not home.  So I watch for him to pass by and I pulled out and went the other way from him (to get help).  I pulled in 284 Knight Place Road and I started blowing my horn, yelling help me.  Eva Scott got me the phone and I called 911.  I had to wait for them to call me back so than (sic) I called termika and told her that I had problems.  Than (sic) 911 called me back and the lady ask me what happen and I start telling her, when Tony Hicks pulled back up, right next to me and pointed a gun again at me.  Eva Scott and her family went in the house when he pulled up.  Than (sic) Tony Hicks pulled out of the drive way going back on dirt road.  The officer came up and Tony Hicks pulled back up in another car and got out and the officer told him to get in his car. So than (sic) I went to give my report.

(Doc. # 27, Ex. B2, Ex. 8).

In her deposition, Strickland is much more equivocal about what she said to law

enforcement.  However, it is undisputed that she reported to law enforcement officers on

more than one occasion that Hicks had pointed a gun at her.

Hicks and Jones were taken to the Lowndes County jail and questioned.  (Doc. # 27,

Ex. C at 43, 66-67).  They also gave written statements.  According to Hicks,

> This started all over some horses, it happen about a week or two ago when her

10

(the mail lady) and my dad had a missunderstanding (sic) about my horses  I ready (sic) don't know what was said or what happen but I know it had my dad mad.  But on yesterday (1-15-14) was the 1st time I seen her for real, because I was waiting on the investergater (sic) at the store and she pull up at the mailbox and that's when I drove off.  But on today 1-16-14 we met up  again on Knight pl road I pull in on the road 1st and she was behinde (sic) me.  So I pull over to get me something to drink out of the trunk, at that time she was driving by as I was about to get back in the car she drove by and I pointed at her and told lil mike that "there go that bitch right there that call them people on me."  then we drove off, and went on to Knight pl.  when we got to Knight pl dog man wanted us to take him home so we did, as we pull up the maillady was in the yard and all of the people was telling us that she had call the police on me and I wanted to know why so I left and came back to see what was going on when I pull back up the police was already there so I walk up to him and ask him what was going and he told me to set (sic) in the car.

(Doc. # 27, Ex. B2, Ex. 9).

In the course of his investigation, Hutson spoke with Jones, the postal inspectors, and Eva Scott ("Scott").[8]  (Doc. # 27, Ex. C at 57-61).  Scott reported to Hutson that she did not see a gun.[9]  (*Id*. at 61).  During his investigation, Hutson also listened to recordings of Strickland's 9-1-1 emergency calls and reviewed her written statements to the postal inspectors and Till. (Doc. # 27, Ex. D at ¶ 18).

After a thorough investigation, which included a review of: (1) Ms. Strickland's statement to me; (2) Ms. Strickland's statement to Sergeant Jones; (3) Ms. Strickland's written statement to postal inspectors; and (4) 9-1-1 recordings of Ms. Strickland's January 16, 2014 call where she said nothing about having a gun pointed at her face on Knight Place Road or Mr. Hicks

---

[8]  Strickland called 9-1-1 from Scott's home, and it was to this residence that the Lowndes County Sheriff's deputies responded.

[9]  In opposition to summary judgment, Hutson submitted an affidavit from Scott confirming that she did not see the "individual in the car pull out a gun or point a gun at Strickland or anyone else."  (Doc. # 27, Ex. F at ¶ 9). She also did not hear anyone call Strickland a bitch.  (*Id*. at ¶ 10).

pulling up next to her at Eva Scott's residence, pointing a gun at her, and calling her a bitch, I determined that the information given by Ms. Strickland to law enforcement authorities was false.

(*Id.*).

As a result of his investigation, Hutson secured an arrest warrant for Strickland, charging her with false reporting to law enforcement authorities.[10] (Doc. # 27, Ex. C at 75). He arrested her on January 30, 2014.

On the day of Strickland's court hearing, Hutson was suffering from pneumonia and did not appear. Consequently, the charge against Strickland was dismissed. (Doc. # 27, Ex. D at ¶ 19).

Strickland filed this action against Hutson on August 8, 2014.

## IV.  DISCUSSION

### A.  Parties' Positions

In his motion for summary judgment, the defendant asserts that he is entitled to qualified immunity because Strickland cannot demonstrate that he violated her Fourth Amendment rights. In the alternative, he argues that he is entitled to qualified immunity because he had probable cause or at least arguable probable cause to arrest her for making a false report to law enforcement officers.

In response, the plaintiff argues that Hutson did not have probable cause to arrest her because he procured the arrest warrant "with false, or withheld, information to the

---

[10]  False reporting to law enforcement authorities is a violation of ALA. CODE § 13A-10-09 (1975).

magistrate." (Doc. # 31 at 5). Consequently, she argues that Hutson is not entitled to qualified immunity because he violated clearly established law by presenting false and withheld material facts to the magistrate to obtain an arrest warrant.

### B. Claims against Deputy Sheriff Hutson in his Official Capacity

To the extent that Strickland sues Hutson in his official capacity, Hutson is a state officer and entitled to Eleventh Amendment immunity.[11] *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). *See also*, *Quern v. Jordan*, 440 U.S. 332 (1979) (holding that § 1983 was not intended to abrogate a state's Eleventh Amendment immunity).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

Under all facets of Alabama law, a county sheriff and his deputies are state officers. *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* ALA. CONST. ART. V, § 112 (designates county sheriff as member of State's executive department). "A sheriff is an executive officer of the State of Alabama, who is immune from suit under

---

[11] Eleventh Amendment immunity does not foreclose suits for injunctive and/or declaratory relief; rather, if applicable, it forecloses suits for compensable damage awards.

Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office."[12] *Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala. 1987). *See also Drain v. Odom*, 631 So. 2d 971, 972 (Ala. 1994). As a deputy sheriff for Lowndes County, Hutson is immune from a lawsuit for damages in his official capacity under the Eleventh Amendment. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Carr v. City of Florence, Ala.*, 916 F.2d 1521 (11th Cir. 1990). It is undisputed that Hutson was acting within his official capacity when he arrested Strickland. Therefore, the court concludes that Hutson's motion for summary judgment on any claims for monetary relief against him in his official capacity is due to be granted because he is absolutely immune from damages in his official capacity. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## C.    Claims against Deputy Sheriff Hutson in his Individual Capacity.

Defendant Hutson argues that qualified immunity shields him from personal liability for his actions in arresting Strickland on January 30, 2014. Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a

---

[12] There are five exceptions to this general rule, applicable in actions brought

(1) to compel [the Sheriff] to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Drain v. Odom*, 631 So. 2d 971, 972 (Ala. 1994); *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987). None of these exceptions apply in this case.

14

reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (officials "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known'" (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007); *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002). Qualified immunity is not merely a defense against liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (citation omitted); *Plumhoff v. Rickard*, 372 U.S. —, —, 134 S.Ct. 2012, 2019 (2014) ("[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.")

> "Qualified immunity shields government officials from civil damages liability unless the official violates a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. —, —, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he was doing violates that right." *Ibid*. (brackets and internal quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. —, —, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*., at —, 131 S.Ct. at 2083.

*Taylor v. Barkes*, — U.S. —, —, 135 S.Ct. 2042, 2044 (2015).

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."" *City and County of San Francisco v. Sheehan*, — U.S. —, —, 135

S.Ct. 1765, 1774 (2015) *quoting Plumhoff*, 372 U.S. at —, 134 S.Ct. at 2023.  To receive

qualified immunity, the defendant must first prove that he was acting within the scope of his

discretionary authority when the allegedly wrongful act occurred. *Lee v. Ferraro,* 284 F.3d

1188, 1194 (11th Cir. 2002).  There is no dispute that Hutson was acting within the course

and scope of his discretionary authority when he arrested Strickland for giving a false report

to law enforcement officers.

The burden now shifts to the plaintiff to allege facts that demonstrate that Hutson is

not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy her burden, Strickland must show two things: (1) that the defendant committed a

constitutional violation, and (2) that the constitutional right the defendant violated was

"clearly established." *Crosby v. Monroe County*, 394 F.3d 1328,  1332 (11th Cir. 2004).  "If

the law is not clearly established, then the court should dismiss the case against the

government official." *Merricks v. Adkisson*,785 F.3d 553, 559 (11th Cir. 2015).  The court

has the discretion to determine which prong of the qualified immunity analysis to address

first in light of the particular circumstances of the case before it.  *Pearson*, 555 U.S. at 236;

*Ashcroft v. al-Kidd*, — U.S. —, —, 131 S.Ct. 2074, 2080 (2011) ("courts have discretion to

decide which of the two prongs of qualified immunity analysis to tackle first.").     T h e

plaintiff alleges that she was subjected to a false arrest in violation of her Fourth Amendment

rights.[13]  The law in this circuit is clear that a claim of false arrest is a constitutional tort

---

[13]  The plaintiff is adamant that she is not pursuing a malicious prosecution claim against Hutson.
*See* Doc. # 31 at 15-16.

cognizable under § 1983.  *Uboh v. Reno*, 141 F.3d 1000, 1002-3 (11th Cir. 1998).  However,

Hutson argues he is entitled to qualified immunity because he had, at a minimum, "arguable

probable cause" to arrest Strickland. *See Davis v. Williams,* 451 F.3d 759, 762-63 (11th Cir.

2006) (stating that in the context of a claim for false arrest, an officer is entitled to qualified

immunity where that officer had "arguable probable cause" to effectuate the arrest); *Jones*

*v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) (same); *see also Hunter v. Bryant*, 502

U.S. 224, 227 (1991) (law enforcement officials entitled to qualified immunity where they

reasonably, but mistakenly, determine that probable cause exists); *Skop v. City of Atlanta*,

485 F.3d 1130, 1137-38 (11th Cir. 2007) (same).

> It is clearly established that an arrest made without probable cause is a
> violation of an arrestee's clearly established Fourth Amendment rights.  *See*
> *Redd v. City of Enter.,* 140 F.3d 1378, 1382 (11th Cir.1998). In the context of
> § 1983, however, a police officer may be entitled to qualified immunity even
> if there was no actual probable cause for an arrest.  *Durruthy v. Pastor,*351
> F.3d 1080, 1089 (11th Cir. 2003). When an officer raises a qualified immunity
> defense in a § 1983 case, the officer will prevail if there was arguable
> probable cause for the arrest.  *Id.*

*Valderrama v. Rousseau*,  780 F.3d 1108, 1113 (11th Cir. 2015) (footnote omitted).  *See*

*also Windham v. City of Fairhope*,  597 Fed. App'x. 1068, 1071 (11th Cir. 2015).

Arguable probable cause exists where an objectively reasonable officer in the same

circumstances and possessing the same knowledge as the officer effectuating the arrest could

have believed that probable cause existed.  *Jones*, 174 F.3d at 1283; *Windham*, 597 Fed.

App'x. at 1071-72; *Thornton v. City of Macon,* 132 F.3d 1395, 1399 (11th Cir. 1998).

The reasonable-officer standard is an objective one; we do not consider the

officer's subjective intent.  "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern."

*Kopperud v. Mabry*, 573 Fed. App'x. 828, 830-31 (11th Cir. 2014) (internal citations omitted).

The court concludes that because Hutson had at least arguable probable cause to arrest Strickland for false reporting to law enforcement officers, he is entitled to qualified immunity.[14]  "Whether a particular set of facts gives rise to probable cause or arguable probable cause for arrest depends . . . on the elements of the crime."  *Crosby*, 394 F.3d at 1333.  "A person commits the crime of false reporting to law enforcement authorities if [s]he knowingly makes a false report or causes the transmission of a false report to law

_____

[14] Although Hutson secured a warrant for Strickland's arrest, the warrant does not provide probable cause or even arguable probable cause because the warrant is simply a conclusory statement.  The entirely of the criminal complaint reads as follows.

> Before me the undersigned Judge/Clerk/Magistrate of the District Court of Lowndes County, Alabama, personally appeared Lt. G. Lashun Hutson who being duly sworn deposes and says that he/she has probable cause for believing and does believe that Peggy Joyce Strickland defendant, whose name is otherwise unknown to the complainant, did within the above named county and did on or about January 16, 2014, unlawfully and knowingly make a false report or cause the transmission of a false report, of a crime, or relating to a crime, to-wit: stating that a black male pull a handgun on her to law enforcement authorities, to-wit: Lowndes County Sheriff's Dept. in violation of 13A-010-009 of the Code of Alabama, against the peace and dignity of the state of Alabama.

(Doc. # 35, Ex. I at 2).

"The 'shield of immunity' otherwise conferred by the warrant, will be lost  . . . where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Messerschmidt v. Millender*, — U.S. —, —, 132 S.Ct. 1235, 1245 (2012) *quoting United States v. Leon*, 468 U.S. 897, 923 (1984). Because the affidavit in support of the arrest warrant in this case is "so lacking in indicia of probable cause," the court accords it no weight in the probable cause determination.

enforcement authorities of a crime or relating to a crime." ALA CODE § 13A-10-9(a) (1975).

Prior to arresting Strickland for making a false report to law enforcement authorities, Hutson

possessed the following information:

- Strickland called 9-1-1 and reported that an individual had a gun and she thought he was waiting for her at the end of the road.

- Strickland identified to the 9-1-1 operator that the individual with the gun was Tony Hicks.

- Strickland reported to Sergeant Jones of the Lowndes County Sheriff's Department that Tony Hicks pointed "what appeared to be a chrome shiny hand gun" at her.

- Strickland reported to Sergeant Jones that Hicks pointed a gun at her while she was in Scott's driveway.

- Strickland was on the phone with the Lowndes County Sheriff's department when Hicks allegedly pointed the gun at her while she was in Scott's driveway but the recording of the 9-1-1 calls demonstrates that Strickland did not report that Hicks pointed a gun at her at that time.

- Law enforcement officers searched Hicks and two vehicles and did not find a weapon.

- In a written statement to postal inspectors, Strickland reported that Tony Hicks pointed a gun at her on Knight Place Road and again when she was at Eva Scott's house.

- In her written statement to postal inspectors, Strickland described the weapon as a shiny handgun.

- In a written statement to Anita Till, an employee of the Fort Deposit Post Office, Strickland stated that Tony Hicks "pulled out a gun (and pointed at me)."

- In the written statement to Till, Strickland again stated that Hicks pointed the gun at her while she was in Scott's driveway.

19

•     Eva Scott reported to Hutson that she did not see a gun during the incident in her driveway.

Based on the information acquired during the investigation, a reasonable officer, knowing what Hutson knew at the time he arrested Strickland, objectively could have believed that Strickland lied to law enforcement about whether Hicks pointed a gun at her, and thus, made a false report to law enforcement authorites.  Strickland reported to the 9-1-1 operator, Sergeant Jones, the postal inspectors and Anita Till that Antonio Hicks had pulled a gun from his trunk and pointed it at her on Knight's Place Road.  She also reported that Hicks pointed the gun at her while she was in Eva Scott's driveway.  However, even though Strickland was on the phone with the 9-1-1 operator,  she did not tell the operator that Hicks was pointing the gun at her in Scott's driveway. No weapon was found on Hicks or in either car he was in that day.  Finally, Eva Scott did not see a gun during the incident in her driveway.  Based on Strickland's inconsistent statements, the lack of corroboration, and the failure of the officers to find a weapon on Hicks or in his vehicles, a reasonable officer "in the same circumstances and possessing the same knowledge as the Defendant['s] knowledge could have believed that probable cause existed to arrest" Strickland for making a false report to law enforcement authorities. *See Rushing v. Parker*, 599 F.3d 1263, 1267 (11th Cir. 2010).

In opposition to summary judgment, the plaintiff focuses exclusively on misstatements Hutson made in the narrative section of his Alabama Uniform

Incident/Offense Report.

> On aforementioned date and approximate time accused reported to Lowndes
> County E-911 that a black male subject had pulled a handgun on her placing
> it in her face and stating 'where it at' before she pulled away and went to a
> local residence for assistance.  After a thorough investigation it was learned
> that none of the information given by the accused was truthful.

(Doc. # 27, Ex. 2 at 2).

Strickland argues that the statement demonstrates that Hutson omitted material facts
and provided untrue information to the Magistrate Judge.  However, her reliance on
Hutson's narrative in the uniform incident/offense report is misplaced.  Regardless of what
Hutson wrote in the narrative section of the offense report,  the report is not the criminal
complaint or the affidavit charging Strickland.  Strickland makes no other argument in
opposition to Hutson's entitlement to qualified immunity.

"Qualified immunity . . . protects officers who 'reasonably but mistakenly conclude
that probable cause is present.' " *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir.
2009) (citations and quotation marks omitted). "Thus, the qualified immunity standard is
broad enough to cover some mistaken judgment, and it shields from liability all but the
plainly incompetent or those who knowingly violated the law." *Id*. (citations and quotation
marks omitted).  Even if Hutson's investigation was not perfect, his investigation "was not
'plainly incompetent.'" *Rushing*, 599 F.3d at 1268.

Under the circumstances, the court concludes that Hutson had, at the very least,
arguable probable cause to arrest the plaintiff for making a false statement to law

enforcement authorities in violation of ALA. CODE § 13A-10-09 (1975), and thus, he is entitled to qualified immunity on the plaintiff's claim of false arrest.

## V.  CONCLUSION

Accordingly, it is the ORDERED and ADJUDGED that:

1.     The defendant's motion for summary judgment (doc. # 25) be and is hereby GRANTED.

2.     This case be and is hereby DISMISSED with prejudice, with costs taxed against the plaintiff.

3.     All pending deadlines are terminated and the pretrial conference and trial of this case be and are hereby CANCELED.

A separate judgment will issue

Done this 9th day of July, 2015.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE